IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| OLIVIER NATAF, *et al.*,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ISAAC OUAZANA, *et al.*,<br><br>　　　　Defendants. | Civil Action No. 21-v-1863-DLB |

## FIRST AMENDED COMPLAINT

Plaintiffs Olivier Nataf ("Mr. Nataf") and JJN Baltimore Corp. ("JJN," and together with Mr. Nataf, the "Plaintiffs"), by their undersigned counsel, for their First Amended Complaint against defendants Isaac Ouazana ("Isaac"), Benjamin Ouazana ("Benjamin"), I&B Capital Investments LLC ("I&B"), WAZ-Brothers, LLC ("WAZ-Bros"), WAZ-Investments, LLC ("WAZ-I"), and WAZ-Management, LLC ("WAZ-M," and together with Isaac, Benjamin, I&B, WAZ-Bros, and WAZ-I, collectively, the "Defendants" or the "Waz Parties"), state as follows:

## NOTICE OF LIS PENDENS

1. This action relates to and involves the ownership and disposition of real property located in and around Baltimore City. Although all the specific real properties for which a Notice of Lis Pendens and/or a Constructive Trust should result from the claims alleged in this action are and will remain unknown until completion of a full accounting of all the Defendants' property-related frauds, notice is hereby given of a Lis Pendens in the following properties:

2. Notice of Lis Pendens is hereby made for the property known as 2900-2902 Reisterstown Road, Baltimore, Maryland 21215, being the same lot of ground recorded in the Land Records of Baltimore City at Liber 3817, folio 159-161, Parcel No. 15-300-3252-001;

3. Notice of Lis Pendens is hereby made for the property known as 2904 Reisterstown Road, Baltimore, Maryland 21215, being the same lot of ground recorded in the Land Records of Baltimore City at Liber 1345, Folio 567-569, Parcel No. 15-300-3252-002;

4. Notice of Lis Pendens is hereby made for the property known as 2800-2802 Reisterstown Road, Baltimore Maryland 21215, being the same lot of ground recorded in the Land Records of Baltimore City at Liber 21067, Folio 126-128, Parcel No. 15-30-3251-001

5. Notice of Lis Pendens is hereby made for the property known as 2302 Ocala Avenue, Baltimore, Maryland 21215, being the same lot of ground recorded in the Land Records of Baltimore City at Liber 3817, Folio 159-161, block 3252, lot 011, Parcel No. 15-300-3252-011

6. Notice of Lis Pendens is hereby made for the property known as 1838 West Baltimore Street, Baltimore, Maryland 21223, being the same lot of ground recorded in the Land Records of Baltimore City at Liber 19824, Folio 248-252, Parcel No. 20-150-0193-049;

7. Notice of Lis Pendens is hereby made for the property known as 5202 Craig Avenue, Baltimore, Maryland, 21212, being the same lot of ground recorded in the Land Records of Baltimore City at Liber 19420, Folio 312-315, Parcel No. 27-490-5165B-015A;

8. Notice of Lis Pendens is hereby made for the property known as 4825 Wilern Avenue, 21215, being the same lot of ground recorded in the Land Records of Baltimore City at Liber 21805, Folio 191-196, Parcel No. 27-200-4604A-013; and

9. Notice of Lis Pendens is hereby made for the property known as 3041 Harlem Avenue, Baltimore, Maryland, 21216, being the same lot of ground recorded in the Land Records of Baltimore City at Liber 19208, Folio 159-164, Parcel No. 16-210-2475D-049.

## PARTIES

10. Plaintiff Olivier Nataf is a resident of Paris, France and is the owner of JJN.

11. Plaintiff JJN is a Florida Corporation with its principal office and principal place of business located in Miami, Florida.

12. Defendant Isaac Ouazana is a resident of the City of Baltimore, Maryland.

13. Defendant Benjamin Ouazana is a resident of the City of Baltimore, Maryland.

14. Defendant I&B Capital Investments, LLC is a Maryland limited liability company, with a principal place of business registered on the Maryland State Department of assessments and taxation database (SDAT) at 4400 Sidehill Rd. Baltimore, MD 21229. Its registered agent is Defendant Isaac Ouazana.

15. Defendant WAZ Brothers, LLC is a Maryland limited liability company, with an SDAT-registered principal place of business at 3503 Glen Avenue, Baltimore, Maryland 21215. Its registered agent is Defendant Isaac Ouazana.

16. Defendant WAZ Investments, LLC is a Maryland limited liability company, with an SDAT-registered principal place of business at 3503 Glen Avenue, Baltimore, Maryland 21215. Its registered agent is Jeffrey Yablon.

17. Defendant WAZ Management, LLC is a Maryland limited liability company, with an SDAT-registered principal place of business at 3503 Glen Avenue, Baltimore, Maryland 21215. Its registered agent is Jeffrey Yablon.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The plaintiffs and defendants are citizens of different states or of a foreign country and the amount at issue herein exceeds $75,000.

19. This Court has jurisdiction to grant the declaratory judgment sought herein pursuant to 28 U.S.C. §§ 2201-02.

20. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all Defendants reside in or maintain their principal places of business in the District of Maryland, Northern Division, the events giving rise to the claims asserted herein occurred in this District, and this action involves real property which is located in this District.

## FACTUAL ALLEGATIONS

21. Over the past several years, Defendants have engaged in an ongoing scheme to defraud Plaintiffs, wrongly appropriate funds due to Plaintiffs, repeatedly breach contracts with Plaintiffs, and violate their fiduciary duties to Plaintiffs. Defendants sold ownerships interests in rental real estate properties located in and around Baltimore, Maryland and then agreed or promised in various written or implied management agreements to manage these properties with certain rental income and other returns being paid to Plaintiffs.

22. Plaintiffs relied on Defendants' false pretenses and representations relating to Defendants managing the properties as property managers, who then abused the trust placed in them in order to continue to defraud these investors of money, property, and benefits of monetary value. Defendants allowed the properties to deteriorate, while concealing their dishonest acts often for years. Defendants misrepresented or concealed material facts, including the rental revenue of the properties, the repairs needed or performed, the expenses needed or charged, the existence of city fines resulting from housing code violations, etc. All the while, Defendants prevented Plaintiffs from discovering their dishonest conduct by obscuring the performance of the properties under management, and by denying Plaintiffs access to business and accounting records, to the extent they exist.

23. One of these investments involves Ocala Stone LLC ("Ocala Stone"), a Maryland limited liability company. Plaintiff JJN and Defendant WAZ-Bros are the sole members of Ocala Stone.

24. On or about April 17, 2019, Ocala Stone, acting through its wholly owned subsidiary, D.R.I.B. LLC, acquired that certain real property and improvements located thereon at 2800 Reisterstown Road, Baltimore, Maryland 21215 ("2800 Reisterstown").

25. To finance the acquisition of 2800 Reisterstown, JJN and WAZ-Bros agreed that JJN would make a capital contribution of $600,000 to Ocala Stone to cover the purchase price.

26. The parties agreed that WAZ-Bros would oversee certain renovations of the 2800 Reisterstown property (the "Renovation Project").

27. JJN and WAZ-Bros' rights and obligations with respect to Ocala Stone are set forth in the Ocala Stone LLC Operating Agreement, dated November 21, 2017 (the "Original Agreement"), by and among JJN and WAZ-Bros, as amended by the First Amendment to the Operating Agreement, dated April 17, 2019 (the "First Amendment," and together with the Original Agreement, collectively, the "Operating Agreement").

28. As an express condition to JJN's capital contribution of $600,000 to finance the purchase of 2800 Reisterstown, the parties agreed to certain terms in the First Amendment requiring WAZ-Bros to make renovations to 2800 Reisterstown, correct certain deficiencies relating to the construction, renovation, and management of certain other properties owned by the parties, and granted certain rights to JJN in the event of WAZ-Bros' default, including the right to remove them from management.

29. Specifically, pursuant to Section 5.7 of the Operating Agreement, WAZ-Bros was required to commence correcting certain enumerated deficiencies within 30 days, including

payment of all unpaid water bills, payment of all unpaid property taxes, and payment of all late fees and penalties.

30. WAZ-Bros failed to pay the unpaid water bills, which it was required to pay under the Operating Agreement, as well as property taxes, and late fees and penalties, requiring JJN and Mr. Nataf to make the required payments to prevent the properties from being sold at tax sales.

31. Specifically, WAZ-Bros failed to pay water bills at the following properties managed by WAZ-Bros on behalf of Ocala Stone and/or Plaintiffs: 2900-2902 Reisterstown Road, 2904 Reisterstown Road, 2302 Ocala Avenue, 2126 Maryland Avenue, 4049 Edgewood Road, 2800 Reisterstown, 3041 Harlem Avenue, 4825 Wilern Avenue, 5202 Craig Avenue, and 1838 W. Baltimore Street, with the period of non-payment in some cases going back to 2017. The total amount of unpaid water bills, including late fees and penalties, that Plaintiffs are required to pay as a result of Defendants' breach of the Operating Agreement and other agreements is at least $185,627.45.

32. WAZ-Bros also failed to pay property taxes at the foregoing properties, which they are required to do under the Operating Agreement. The total amount of unpaid taxes, including late fees and penalties, that Plaintiffs were required to pay as a result of Defendants' negligence and breach of the Operating Agreement and other agreements was $37,011.07 and currently is estimated to be in excess of $60,000 with additional late fees and penalties.

33. The foregoing are not exhaustive lists and Plaintiffs reserve the right to supplement the properties for which WAZ-B and their affiliated Waz Parties failed to pay water bills, property taxes, and other amounts despite their express and unequivocal obligation to do so.

34. The foregoing properties, together with all other properties owned wholly or in part by Plaintiffs and which the Waz Parties manage, shall be referred to herein as the "Subject Properties."

35. Defendants sent Plaintiffs false and misleading documentation intended to cause Plaintiffs to believe that some of the water bills, property taxes, and late fees and penalties had been paid when public records later revealed that they had not been paid. Defendants sent such false and misleading documentation to conceal their willful failure to pay such fees, with the intent to mislead Defendants about the costs and expenses of managing the Subject Properties.

36. In addition, WAZ-Bros was required under the Operating Agreement to register with the Baltimore City Department of Housing & Community Development and obtain a rental license for each property.

37. WAZ-Bros failed to register with the City of Baltimore or obtain the required rental licenses for the Rental Properties as required under the Operating Agreement.

38. Pursuant to Section 5.6.2 of the Operating Agreement, WAZ-Bros was required to provide true and complete copies of all plans and specifications for proposed renovations, all contracts between the Company and contractors, suppliers and other vendors providing services or materials for each renovation project, and all permits, certifications, and inspection reports issued in connection with the renovations.

39. Despite due demand, WAZ-Bros failed to provide the requested documentation as required under the Operating Agreement.

40. Pursuant to Section 5.6.3 of the Operating Agreement, WAZ-Bros was required to provide JJN with quarterly status reports within five days after the end of each quarter, setting

forth a written description of the activities and progress made and a summary of all expenses, including copies of all invoices and proof of payment.

41. Notwithstanding its obligation under the Operating Agreement, and despite due demand, WAZ-Bros failed to provide any quarterly status updates.

42. Pursuant to Section 5.1.3(iii) of the Operating Agreement, the foregoing breaches constitute Removal Events, triggering Plaintiffs' right to remove WAZ-Bros as manager of Ocala Stone and property manager of 2800 Reisterstown and other properties and appoint a replacement manager.

43. In addition, pursuant to Section 5.6.1 of the Operating Agreement, the Renovation Project for 2800 Reisterstown was required to be completed by July 1, 2020 (the "Project Completion Date").

44. WAZ-Bros was required to submit proof of completion of the Renovation Projection by providing Plaintiffs with a certificate of occupancy, rental property license, and lead paint certification on or before the Project Completion Date.

45. Pursuant to Section 5.6.2(5) of the Operating Agreement, WAZ-Bros were required to provide JJN with a written plan and timeline for completion upon request.

46. WAZ-Bros failed to complete the Renovation Project by the Project Completion Date, failed to provide a certificate of occupancy, rental property license, and lead paint certification, and despite due demand, failed to provide Plaintiffs with a written plan or timeline for completion.

47. Pursuant to the Operating Agreement, in the event that WAZ-Bros failed to complete the Renovation Project by the Project Completion Date, JJN would be entitled to 100% of the distributions from the 2900 Reisterstown Property and the Edgewood Property until such

time as the Renovation Project is completed, and if those properties are not generating sufficient revenue to yield distributable cash flow, JJN is entitled to take over management of the Renovation Project, remove WAZ-Bros as manager and property manager, and pursue all other remedies at law or equity.

48. Despite WAZ-Bros' failure to complete the renovations in a timely fashion, it has wrongfully and intentionally failed to remit 100% of the distributions from the 2900 Reisterstown Property and the Edgewood Property. Instead, WAZ-Bros, for the benefit of the other Defendants, has improperly kept all such distributions for itself.

49. Plaintiffs also made investments with the Waz Parties through JNL Maryland, LLC ("JNL").

50. Mr. Nataf and his affiliate, JNJ, own a 60% interest in JNL. Defendants Benjamin Ouazana and Isaac Ouazana each own a 12.5% interest in JNL. The remaining 15% interest in JNL is held by another investor.

51. For all Subject Properties, including the JNL properties, Plaintiffs entered into management agreements with the Waz Parties (collectively, the "Management Agreements").

52. Pursuant to the Management Agreements, the Waz Parties collected a management fee for managing the Subject Properties and were required to pay all applicable taxes and bills, obtain all required licenses and registrations, provide Plaintiffs with information concerning each of the Subject Properties, including information on rental status and property condition, and collect and remit rent and other amounts due to Plaintiffs.

53. The Waz Parties failed to properly manage the Subject Properties as required by the parties' agreements and failed to provide material information concerning whether each property was rented, the amounts of rent received, the conditions of each property, the status of

various renovations and repairs, the payment (or non-payment) of water bills, property taxes, and other fees, or any other relevant information.

54. The Waz Parties also routinely misappropriated funds rightly belonging to JNL and the Plaintiffs.

55. For example, the Waz Parties sold one property, known as 4224 Ivanhoe, but kept all of the proceeds notwithstanding the Plaintiffs' ownership interest therein and entitlement to receive a percentage of the proceeds.

56. Defendants falsely represented to Plaintiffs that the proceeds from 4224 Ivanhoe had been reinvested in renovation projects that Plaintiffs never agreed to and, upon information and belief, never occurred.

57. The Waz Parties also sold another property, known as 2904 Rockrose, but failed to remit the percentage of the proceeds to Plaintiffs to which they were entitled.

58. In addition to unpaid amounts from the proceeds of sales of the Subject Properties, the Waz Parties have failed to remit rental income from the Subject Properties belonging to Ocala Stone and JNL to which Plaintiffs are legally and contractually entitled.

59. Moreover, the Waz Parties failed to remit payment to Plaintiffs in connection with a transaction known as the "Wanaf Investment."

60. In or around April 2020, Mr. Nataf and the Waz Parties entered into an oral investment agreement (the "Wanaf Agreement") regarding an investment in 22 properties located in the City of Baltimore for approximately $700,000.

61. Pursuant to the terms of the Wanaf Agreement, Mr. Nataf agreed to contribute 2/3 of the total investment and the Waz Parties agreed to contribute the other 1/3.

62. The proposed Wanaf investment involved a transaction that was to be performed within one year from the making of the Agreement.

63. The Waz Parties represented to Mr. Nataf that they would use Mr. Nataf's investment to acquire the 22 properties, and that they had reached an agreement to sell eight of the 22 properties to an unnamed purchaser immediately upon closing for $420,000.

64. The remaining properties would then be sold to other buyers for a profit, and Plaintiffs were to receive their share of the proceeds.

65. Just before the closing date for the transaction, the Waz Parties approached Mr. Nataf and said that the terms of the deal had changed.

66. Instead of 22 properties, it was now 16, and instead of Mr. Nataf contributing 2/3 of the total investment and the Waz Parties contributing 1/3, Mr. Nataf would now have to contribute 100% of the funds.

67. The Waz Parties made false representations and misleading assurances to Mr. Nataf regarding the profitability of the deal and the return that he would receive from the investment with the intention of inducing Mr. Nataf to rely on their representations, agree to the terms, and finance the transaction.

68. In particular, the Waz parties promised Plaintiff a $100,000 return on his investment.

69. Mr. Nataf, relying on the Waz Parties' lies, misrepresentations and omissions, agreed to their terms.

70. The Waz Parties bought and then sold the properties according to these agreements, but kept all of the excess proceeds for themselves.

71. Mr. Nataf did not receive all payments due to him from the Wanaf Investment.

72. Specifically, the Waz Parties failed to pay Mr. Nataf the $100,000 that they had promised in exchange for his investment, and instead they kept the proceeds for themselves.

73. The total amount owed to Plaintiffs by Defendants as a result of their improper, fraudulent conduct, and breaches of contract and fiduciary duty is in excess of $2,500,000, and continues to accrue daily.

### FIRST CLAIM FOR RELIEF (Breach of Contract)

74. Plaintiffs incorporate the allegations set forth in paragraphs 1-73 of the Amended Complaint as though set forth at length herein.

75. Plaintiffs and Defendants entered into the Operating Agreement, the Management Agreements, the Wanaf Agreement, and other oral and written agreements which can be inferred from the intention of the parties as evidenced by the circumstances, the ordinary course of dealing, and the common understanding of all involved (collectively, the "Agreements").

76. The foregoing Agreements are valid and binding contracts between Plaintiffs and Defendants.

77. Plaintiffs complied with their obligations under the Agreements.

78. Defendants breached their obligations under the Agreements by, among other breaches, failing to provide management services to the Subject Properties, pay all required bills, taxes, and fees, obtain all required licenses and registrations, provide quarterly status reports, renovation plans, timelines, and other information, collect and remit rent and other payments, and distribute all amounts owed to Plaintiffs as and when due.

79. Defendants also breached the Operating Agreement by failing to complete the Renovation Project by the Project Completion Date, which constitutes a material breach entitling

Plaintiffs to remove the Waz Parties from any and all management positions and appoint replacement management.

80. As a result of Defendants' breaches, Plaintiffs have incurred substantial damages in an amount to be determined at trial but in no event less than $2,500,000.

81. All sums are justly due and owing and there are no valid grounds of defense.

## SECOND CLAIM FOR RELIEF (Declaratory Judgment)

82. Plaintiffs incorporate the allegations set forth in paragraphs 1-81 of the Amended Complaint as though set forth at length herein.

83. There exists a case and controversy which is ripe for adjudication between Plaintiffs and Defendants as to the parties' rights and obligations concerning the Subject Properties and the Agreements.

84. Plaintiffs seek a declaration that Defendants have breached their obligations under the Agreements and that Plaintiffs are entitled to remove Defendants from management of Ocala Stone and JNL and to remove them as property managers of each and every one of the Subject Properties; and that Defendants are, effectively immediately, removed from any and all management positions and that Plaintiffs may appoint replacement management effective immediately.

## THIRD CLAIM FOR RELIEF (Unjust Enrichment)

85. Plaintiffs incorporate the allegations set forth in paragraphs 1-84 of the Amended Complaint as though set forth at length herein.

86. Plaintiffs plead, in the alternative, that if it were determined that no enforceable contract exists with respect to the Wanaf Tranasction and certain other Subject Properties, Defendants are nevertheless liable under the equitable doctrine of unjust enrichment.

87. Here, through the fraudulent and bad-faith conduct set forth herein, Defendants have received a benefit as they have diverted substantial funds rightly belonging to Plaintiffs to themselves and have thereby enriched themselves at Plaintiffs' expense.

88. It would be against equity and good conscious to permit Defendants to retain the funds that they have wrongfully diverted to themselves because they have stolen these funds from Plaintiffs through deception and outright fraud, leaving Plaintiffs with nothing while using the Plaintiffs' funds to make substantial investments and keeping all of the proceeds.

89. As a result of Defendants' unjust enrichment, Plaintiffs have been damaged in an amount to be determined at trial but in no event less than $2,500,000.

**FOURTH CLAIM FOR RELIEF (Common Law Fraud)**

90. Plaintiffs incorporate the allegations set forth in paragraphs 1-89 of the Amended Complaint as though set forth at length herein.

91. The Defendants made multiple misrepresentations and concealments of material facts, as set forth in paragraphs 21 – 71, *supra*.

92. These misrepresentations and concealments of material facts were made for the purpose of improperly and wrongfully: (a) inducing JJN to make a $600,000 capital contribution to Ocala Stone to cover the purchase price of 2800 Reisterstown and the cost of renovations to certain other properties owned by the parties in connection with the Operating Agreement; (b) inducing Plaintiffs to enter into Management Agreements with the Waz Parties whereby the Waz Parties would manage the Subject Properties; (c) inducing Mr. Nataf to enter in the Wanaf Agreement and invest $700,000 for the purchase of many properties; (d) enabling the Defendants to manage the properties and investments for the benefit of the Plaintiffs thereby allowing them to improperly appropriate the proceeds for themselves; and (e) concealing from the Plaintiffs the

14

existence of their claims and induce them to delay taking action on their claims if they suspected or discovered Defendants' fraud.

93. Plaintiffs justifiably relied upon the aforesaid representations of the Defendants and, accordingly: (a) entered in the Operating Agreement and made a capital contribution of $600,000 with the expectation that Defendant WAZ-Bros would pay unpaid water bills, unpaid property taxes, late fees and penalties, and make renovations to 2800 Reisterstown and correct certain deficiencies relating to construction renovations and management of other properties owned by the WAZ-Bros and JJN; (b) entered into the Management Agreements with the Waz Parties to manage the Subject Properties with the expectation that the Waz Parties would pay all applicable taxes and bills, obtain all required licenses and registrations, and provide Plaintiffs with timely and accurate information concerning each of the Subject Properties; and (c) entered into the Wanaf Agreement and invested $700,000 for the Wanaf Investment. Plaintiffs took these actions in reliance on the misrepresentations and material omissions by Defendants.

94. To the extent that Defendants concealed material facts about their frauds from the Plaintiffs, Plaintiffs remained unaware of the existence of their claims and or were induced to delay taking legal action on their claims even if they suspected or discovered the Defendants' frauds.

95. As a result of the aforesaid fraud by the Defendants, Plaintiffs have been damaged in an amount to be determined at trial but in no event less than $2,500,000, as well as the benefit of the ownership and enjoyment of the underlying real properties and the income generated by them.

96. In engaging in this outrageous conduct, Defendants acted in conscious disregard for Plaintiffs' rights and did so willfully, maliciously, wantonly, and with malicious intent to

harm Defendants. Plaintiffs are therefore entitled to recovery of punitive damages against Defendants.

## FIFTH CLAIM FOR RELIEF (Constructive Fraud)

97. Plaintiff incorporates the allegations set forth in paragraphs 1-96 of the Amended Complaint as though set forth at length herein.

98. Defendants represented to Plaintiffs that Defendants would expend their best efforts in order to fulfill Plaintiffs' profit and management expectations for the Operating Agreement, the Management Agreements, and the Wanaf Agreement, as set forth in paragraphs 21 – 71, *supra*.

99. Under the terms of the Operating Agreement, the WAZ-Bros accepted substantial funding from JJN, and promised to make renovations to 2800 Reisterstown, correct certain deficiencies relating to the construction, renovation and management of certain other parties owned by the parties, and pay all unpaid water bills, unpaid property taxes and all late fees and penalties.

100. Under the terms of the Management Agreements, the Waz Parties accepted substantial funding from the Plaintiffs, and promised to pay all appliable taxes and bills, obtain all required licenses and registrations, provide Plaintiffs with timely and accurate information concerning each of the Subject Parties, including information on rental status and property condition, and collect and remit rent and other amounts due to Plaintiffs.

101. Under the terms of the Wanaf Agreement, the Waz Parties accepted substantial funding from Mr. Nataf, and promised Mr. Nataf a $100,000 return on his investment.

102. The Plaintiffs reasonably placed their confidence in Defendants to perform as agreed pursuant to the terms of the Agreements, and as based on Defendants' representations concerning the operations and management of the properties.

103. The relationship created between the parties was one of special trust and confidential and fiduciary in nature.

104. Instead, Defendants did not give sufficient time and attention to the duties they accepted under their agreements with the Plaintiffs, and accordingly failed to deliver payments owed to Plaintiffs and failed to properly manage and operate the properties.

105. Defendants breached their duties to Plaintiffs and intentionally acted in a manner that was willful and contrary to the best interests of Plaintiffs or acted with reckless disregard for the Plaintiffs' rights.

106. As a result of the aforesaid fraud by the Defendants, Plaintiffs have been damaged in an amount to be determined at trial but in no event less than $2,500,000, as well as the benefit of the ownership and enjoyment of the underlying real properties and the income generated by them.

107. In engaging in this outrageous conduct, Defendants acted in conscious disregard for Plaintiffs' rights and did so willfully, maliciously, wantonly, and with malicious intent to harm Defendants.  Plaintiffs are therefore entitled to recovery of punitive damages against Defendants.

## **SIXTH CLAIM FOR RELIEF (Conversion)**

108. Plaintiff incorporates the allegations set forth in paragraphs 1-107 of the Amended Complaint as though set forth at length herein.

109. Upon misappropriating all or part of Plaintiffs' investment funds, Plaintiffs' rightful interest in and to the properties, and any income obtained from these properties, and in cases where Defendants claimed to have sold certain properties, Defendants exerted ownership or dominion over Plaintiffs' funds and property, which were intended for a particular purpose, and which were to be segregated from Defendants' funds. Defendants have neither accounted for nor returned such funds or property as of the filing of this Amended Complaint.

110. Defendants' continued exertion of ownership or dominion over Plaintiffs' funds and properties was in denial of, or inconsistent, with Plaintiffs' rights to these funds and properties.

111. As a result, Plaintiffs sustained substantial economic injury and loss which would not have occurred but for the actions of Defendants.

112. As a direct and proximate result of these and other dishonest acts by Defendants, the Plaintiffs were deprived of the value of the items converted by Defendants in an amount to be determined at trial but in no event less than $2,500,000.

**SEVENTH CLAIM FOR RELIEF (Breach of Fiduciary Duty)**

113. Plaintiffs incorporate the allegations set forth in paragraphs 1-112 of the Amended Complaint as though set forth at length herein.

114. At all times material to this Amended Complaint, Defendants were in a fiduciary relationship with Plaintiffs as investors and as owners who entrusted these Defendants with the management of their properties, in that the parties were in an agent-principal relationship, such that, as their agents, Defendants owed Plaintiffs fiduciary duties and were required to deal with them using utmost good faith, undivided loyalty, and with inherent fairness.

115. Plaintiffs relied on the claim of Defendants that they would conduct themselves honestly and would refrain from engaging in self-dealing.

116. Plaintiffs trusted that Defendants would act for the benefit of Plaintiffs in allowing Defendants to dispose of the properties in accordance with the instruction of the Agreements, and in their handling of Plaintiffs' investments.

117. As fiduciaries, Defendants were under a duty to keep clear and accurate accounts showing at a minimum what they received and what they expended, along with verifiable justifications. Defendants were also required to render an accounting when called on to do so at reasonable times by Plaintiffs who were entitled to receive all reasonably pertinent information about the handling of their funds and properties.

118. Instead, Defendants breached their fiduciary duties to Plaintiffs by systematically engaging in self-dealing to the detriment of Plaintiffs.

119. Defendants' breach occurred in every transaction with Plaintiffs, including, but not limited to, Defendants' acts of: (a) failure to use funds entrusted to them for the purpose allowed and failure to refrain from converting these funds to Defendants' use; (b) self-dealing involving properties after sales were consummated; and (c) failure to refrain from dishonest conduct resulting in Defendants' breach of material conditions of the Agreements.

120. Defendants breached their fiduciary duties to Plaintiffs by systematically and in every instance refusing to render accounts to them, despite repeated demands for access to accounting records and for justification for expenses.

121. As a direct and proximate result of Defendants' breaches of fiduciary duties, the Plaintiffs sustained damages in an amount to be determined at trial but in no event less than $2,500,000.

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Award Plaintiffs compensatory damages against Defendants, jointly and severally, in an amount exceeding $2,500,000;

2. Grant declaratory judgment stating that Defendants are removed from the any and all positions of management in Ocala Stone and JNL and as property managers of any and all of the Subject Properties and that Plaintiffs may appoint replacement management for each entity and property;

3. Award Plaintiffs punitive damages against Defendants, jointly and severally, in an amount to be determined at trial;

4. Award Plaintiffs their attorneys' fees and costs;

5. Award Plaintiffs pre-judgment and post-judgment interest; and

6. Grant Plaintiffs such other relief as may be appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all of claims for which they are entitled to a jury trial.

Dated: January 13, 2022                                    Respectfully submitted,

**FOX ROTHSCHILD LLP**

By:   *s/ Robert P. Fletcher*
Robert P. Fletcher (Bar No. 02893)
2020 K Street, N.W., Suite 500
Washington, D.C. 20006
Telephone: (202) 461-1222
Facsimile: (202) 461-3102
rfletcher@foxrothschild.com

*Attorney for Plaintiffs*